UNITED STATES COURT OF APPEALS FOR
THE FIFTH CIRCUIT

| | | |
|---|---|---|
| PRECISION REFRACTORY SERVICES, LLC and its Successors | § § § § § § | |
| *Petitioner,* | § § | |
| v. | § § | Petition for Review |
| LORI CHAVEZ-DEREMER, Secretary of Labor, United States Department of Labor, and OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, | § § § § § § | |
| *Respondents* | | |

---

## PETITION FOR REVIEW

---

Petitioner Precision Refractory Services, LLC, and its Successors hereby petitions the Court for review of the Order of Administrative Law Judge Heather A Joys, which was issued on April 15, 2025, and which became a final order of the Occupational Safety and Health Review Commission (OSHRC) on May 15, 2025, in OSHRC Docket No. 23-0121.[1]

---

[1] The Complaint in this matter was brought in the name of the Acting Secretary of Labor. The Honorable Lori Chavez-Deremer was sworn in as Secretary of Labor on March 11, 2025.

Pursuant to 5TH C$_{IR}$. R. 15.1, the Notice of Final Order of the Occupational Safety and Health Review Commission and the Final Order of Judge Joys are attached to this petition.

Respectfully submitted,

**PAPPAS GRUBBS PRICE PC**

By: _____
     Steven O. Grubbs
     State Bar No. 00796683
     Federal ID: 21932
     sgrubbs@pappasgrubbs.com
     Travis Livermore
     tlivermore@pappasgrubbs.com
     Two Houston Center
     909 Fannin Street, Suite 2500
     Houston, Texas 77010
     Telephone: 713.951.1014
     Facsimile: 713.951.1199
     ***Attorneys for Petitioner Precision Refractory Services, LLC***

## Certificate of Service

      I hereby certify that the foregoing motion was served on July 14, 2025 by sending true and correct copies to the persons listed below. The petition with all exhibits is being sent to all persons listed below by Federal Express, second day delivery. Additionally, it is being sent electronically to Nicole Spain and Madison Monzon at the email addresses listed below.

*Via Electronic Mail and*
*FedEX 2 day delivery: 882767597615*
Nicole A. Spain
Madison J. Monzon
Attorney for Complainant
US Department of Labor
61 Forsyth Street, S.W., Room 7T10
Atlanta, GA 30303
*Monzon.madison.j@dol.gov*
*Spainstaton.niclole.a@dol.gov*

*FedEX 2 day delivery: 882767379492*
John X. Cerveny
Executive Secretary
U.S. Occupational Safety and
    Health Review Commission
1120 20th Street, N.W., 9th Floor
Washington, D.C. 20036-3457

*FedEX 2 day delivery: 882767059459*
Tremelle I. Howard
Rachel Graeber
Regional Solicitor
US Department of Labor
61 Forsyth Street, S.W., Room 7T10
Atlanta, GA 30303

*FedEX 2 day delivery*: 882767155033
Louise M. Betts
Heather R. Phillips
Counsel for Appellate Litigation
Office of the Solicitor
200 Constitution Avenue, N.W.
Room S4004
Washington, D.C. 20210

_____
Steven O. Grubbs



United States of America
**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION**
1120 20th Street, N.W., Ninth Floor
Washington, DC 20036-3457

Office of the
Executive Secretary

Phone: (202) 606-5400
Fax:    (202) 606-5050

|  |  |
|---|---|
| SECRETARY OF LABOR, | : |
| Complainant, | : |
| v. | :    OSHRC Docket No. 23-0121 |
| PRECISION REFRACTORY SERVICES, | : |
| Respondent. | : |

## NOTICE OF FINAL ORDER

The Respondent's Petition for Discretionary Review in the above cited action was received by the Commission on April 25, 2025. The case was not directed for review. **Therefore, the decision of the Administrative Law Judge became a final order of the Commission on May 15, 2025.** Commission Rules 90(b)(2) and 90(d), 29 C.F.R. §§ 2200.90(b)(2) and 2200.90(d); Section 12(j) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 661(j).

**ANY PERSON ADVERSELY AFFECTED OR AGGRIEVED WHO WISHES TO OBTAIN REVIEW OF THE DECISION OF THE ADMINISTRATIVE LAW JUDGE MUST FILE A PETITION FOR REVIEW WITH THE APPROPRIATE FEDERAL COURT OF APPEALS WITHIN 60 DAYS OF THE DATE OF THE ABOVE FINAL ORDER DATE.** *See* Section 11 of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 660; Fed. R. App. P. 15.

FOR THE COMMISSION,

Dated: May 16, 2025

John X. Cerveny
Executive Secretary

ATTACHMENT 1

DOCKET NO. 23-0121

NOTICE IS GIVEN TO THE FOLLOWING:

Louise M. Betts, Counsel for Appellate Litigation
Heather R. Phillips, Counsel for Appellate Litigation
Office of the Solicitor, U.S. DOL
200 Constitution Ave., NW, Room S4004
Washington, DC 20210

Tremelle I. Howard, Regional Solicitor
Rachel L. Graeber, Counsel
Nicole A. Spain, Trial Attorney
Madison J. Monzon, Trial Attorney
U.S. Department of Labor
Office of the Solicitor
61 Forsyth Street, S.W., Room 7T10
Atlanta, GA 30303

Steven O. Grubbs, Esq.
Travis Livermore, Esq.
Pappas Grubbs Price, P.C.
909 Fannin Street, Suite 2500
Houston, TX 77010

Keith E. Bell, Chief Administrative Law Judge
Occupational Safety and Health Review Commission
1120 20th Street, NW, Ninth Floor
Washington, DC 20036



United States of America
**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION**
1924 Building - Room 2R90, 100 Alabama Street, S.W.
Atlanta, Georgia 30303-3104

| | |
|---|---|
| Secretary of Labor, | |
|     Complainant | |
|     v. | OSHRC Docket No. **23-0121** |
| Precision Refractory Services, | |
|     Respondent. | |

Representatives:

Nicole A. Spain, Esq., Madison J. Monzon, Esq. and Rachel Graeber, Esq.
U.S. Department of Labor, Office of the Solicitor, Atlanta, GA, for Complainant

Steven O. Grubbs, Esq. and Travis Livermore, Esq.
Pappas Grubbs Price PC for Respondent

JUDGE:     Administrative Law Judge Heather A. Joys

## DECISION AND ORDER

During the early morning hours of November 12, 2022, a Precision Refractory Services, LLC, (PRS) employee was seriously injured when a scaffold component rolled off the upper level of the scaffold under which he had been working and struck his arm. The blow fractured his wrist. PRS reported the injury to the Occupational Safety and Health Administration (OSHA) and the Mobile, Alabama, Area Office dispatched a Compliance Safety and Health Officer (CSHO) to the worksite to investigate the accident.

As a result of that investigation, the Secretary of Labor issued PRS a citation alleging two serious violations of regulations promulgated under § 5(a)(2) of the Occupational Safety and Health Act of 1970; 29 U.S.C. §§ 651- 678 (2014) (the Act). The Secretary alleged PRS violated

29 C.F.R. §§ 1926.451(f)(7) (Item 1a) and 1926.451(h)(2)(i)[1] (Item 1b), both of which address scaffold safety. The Secretary alleged PRS exposed its employee to a struck-by hazard by failing to ensure alterations to the scaffold were made by a competent person and by allowing employees to enter a hazardous area below the scaffold. The Secretary proposes a total penalty of $8702 for the violations. PRS timely contested the citation bringing this matter before the Occupational Safety and Health Review Commission pursuant to § 10(c) of the Act.

The undersigned held a hearing on January 6, 2025, in Mobile, Alabama. The parties filed post-hearing briefs on March 7, 2025.[2]

For the reasons discussed below, Item 1a alleging a violation of § 1926.451(f)(7) is vacated, and Item 1b alleging a violation of § 1926.451(h)(2)(i) is affirmed with a penalty of $7000.

## JURISDICTION AND COVERAGE

The parties stipulated jurisdiction over this action is conferred upon the Commission pursuant to § 10(c) of the Act. The parties also stipulated PRS was an employer engaged in a business affecting interstate commerce within the meaning of § 3(5) of the Act. The record establishes PRS is an employer covered under the Act and the Commission has jurisdiction over this proceeding.

## BACKGROUND

### Stipulated Facts

The parties stipulated the following facts were not in dispute:

1. Jurisdiction of this action is conferred upon the [C]ommission by § 10(c) of the Act.

2. Precision Refractory Services, LLC ("PRS" or "Respondent") is an employer engaged in a business affecting commerce within the meaning of § 3(5) of the Act, 29 U.S.C. § 625(5).

3. Respondent's business involves refractory work.

4. Part 1926 applies to employers who are engaged in construction work.

5. 29 C.F.R. § 1926 is applicable to this action.

---

[1] On September 20, 2023, the court granted the Secretary's motion to amend the original citation which had alleged a violation of 29 C.F.R. § 1926.451(f)(13).

[2] To the extent either party failed to raise any argument in its post-hearing brief, such argument is deemed abandoned. Although the Secretary addressed the affirmative defense of unpreventable employee misconduct in her brief, PRS did not. PRS has waived the defense. *See Georgia-Pacific Corp.*, No. 89-2713, 1991 WL 132732, at *3 (OSHRC June 28, 1991) (declining to reach issue on which the aggrieved party indicates no interest).

6. Complainant timely served Respondent with the Citation and Notification of Penalty.

7. Complainant does not contest whether the Notice of Contest was timely filed.

8. The inspection site for the Citation is located at 3000 Old Chemstrand Road, Cantonment, FL 32533 (hereinafter "worksite").

9. CSHO Kitchen is employed as a CSHO with the Mobile, Alabama Area Office.

10. CSHO Kitchen conducted the subject OSHA inspection at the worksite on November 15 and November 17, 2022.

11. CSHO Kitchen has personal knowledge of the facts and circumstances associated with the subject OSHA inspection of the worksite.

12. On November 12, 2022, [the injured employee] [3] was employed by Respondent.

13. [The injured employee] was injured and hospitalized following an accident at the worksite on November 12, 2022 (the "incident").

14. OSHA opened an investigation of the worksite on November 15, 2022.

15. Jose Bustos was employed by Respondent in a supervisory or managerial capacity on November 12, 2022, and at the time of the OSHA investigation.

16. The second deck scaffold platform was a minimum of 10 feet above the ground.

17. Dominga Rocha was working on the scaffold at a higher elevation than the level at which [the injured employee] was working at the time of the accident.

18. Employees of Coastal Industrial Services, Inc. served as the "competent person(s)" with respect to OSHA scaffolding standards.

19. On and up to six (6) months prior to the issuance of the Citation, Respondent employed between 25 and 100 individuals.

(Tr. 9; Joint Pre-Hr'g Statement, pp. 6-7)

### Findings of Fact

PRS performs refractory and fireproofing work (Tr. 246). Refractory work consists of laying fireproof or insulated brick inside heaters, boilers, furnaces, and other similar structures (Tr. 174, 246). PRS has been in business since 2021 and employs approximately 100 individuals (Tr. 32, 245).

---

[3] The original stipulations identify the injured employee by name. To protect the individual's privacy, the name has been redacted in this decision.

In 2022, PRS had a contract to perform refractory work inside a furnace on the property of Ascend Performance Materials (Ascend) in Cantonment, Florida (Tr. 27, 174). The general contractor for the construction work being performed on the Ascend property was Koch[4] (Tr. 28). In addition to PRS, Koch had several subcontractors performing work on the Ascend property (Tr. 29). Koch contracted with Coastal Industrial Services, Inc. (Coastal) to erect, maintain, and dismantle the scaffold required to perform the refractory work inside the furnace (Tr. 29-30). Koch contracted with PRS to lay the fireproof brick inside the furnace. Since November 4, 2022, PRS had worked two 12-hour shifts or 24 hours each day on this contract (Tr. 230; Ex. C-8).

The furnaces, depicted in Exhibit C-13, are large cylindrical concrete structures. To access the furnaces and lay the fireproof brick on the interior walls, PRS employees used scaffolds erected by Coastal inside and outside the furnaces (Tr. 174-75; see Ex. C-14). The scaffolds were eight decks high with six feet between each deck (Ex. C-7). Coastal used a colored tag system to indicate scaffolds had been inspected and were safe to use (Tr. 211-12).

The accident occurred less than two weeks into the project (Tr. 179; Exs. C-7 and C-10). On the day of the accident, Domingo Rocha, a PRS foreman, and Jones Smith, a PRS laborer, were stacking brick on the scaffold at a height of approximately 12 to 14 feet above ground level (Ex. C-10, p. 1). Juan Gallegos and another, unidentified, PRS employee were on the opposite side of the same scaffold doing similar work (Tr. 222-23). The brick were in cardboard boxes (Tr. 182). The men were removing the brick from the boxes, which fell to the ground below, passing the brick from one level to another, and stacking it (Tr. 185-86).

Jose Bustos, an onsite supervisor for PRS, had assigned the injured employee to work on the ground level below the scaffold cleaning up the falling debris while the other employees worked above (Tr. 184). As the men worked, a scaffold component, described as a three-inch diameter pipe, fell off the scaffold to the ground below, striking the injured employee (Tr. 121-22; Ex. C-10 p. 1). Mr. Gallegos testified to hearing a bang and the injured employee say "some bad words." (Tr. 223)

Foreman Rocha descended the scaffold to the ground level to see what had happened (Tr. 44, 54; Ex. C-8 p. 2). After seeing that the employee had been injured by the fallen object, Foreman Rocha contacted Supervisor Bustos who took the injured employee to the onsite

---

[4] The name of the general contractor is identified in the record only as "Koch."

medical clinic. Andrew Castillo, the job superintendent for PRS, later transported the injured employee to a hospital where he was treated for an open fracture and laceration to his hand (Ex. C-10 pp. 1-2).

PRS reported the injury to the Mobile Area OSHA office (Tr. 26). The Area Office assigned CSHO William Kitchen to perform an inspection of the worksite and investigation of the accident (Tr. 26). CSHO Kitchen began his investigation by going to the Ascend worksite where he held an opening conference with representatives from Ascend, Koch, and PRS (Tr. 27-30). CSHO Kitchen then went to the accident site where he took photographs from outside the furnace (Tr. 33-35; Exs. C-13 and C-14). He obtained the names of employees present at the time of the accident and returned two days later at which time he interviewed Foreman Rocha, Supervisor Bustos, and the unidentified employee (Tr. 37, 45-53). CSHO Kitchen reduced the interviews to writing and had the employees sign their statements (Exhs. C-7, C-8, and C-9). CSHO Kitchen later interviewed representatives from Koch's and Coastal's management teams (Tr. 38).

As part of his investigation, CSHO Kitchen requested documents from PRS. In response to his request, PRS provided CSHO Kitchen with two Job Safety Analyses (JSA's) completed by Supervisor Bustos (Exhs. C-11 and C-12). PRS also gave him a copy of its incident report for the accident (Exh. C-10). The report contained statements taken on the day of the accident. The witness statements taken by CSHO Kitchen and those taken by PRS did not vary in description of the events of the morning.

As a result of his investigation, CSHO Kitchen recommended the Secretary issue a citation alleging two serious violations of the scaffold standard to PRS. The Secretary issued the recommended citation and PRS timely contested it, bringing the matter before the Commission.

## DISCUSSION

To prove a violation of an OSHA standard, the Secretary must show by a preponderance of the evidence that (1) the cited standard applies; (2) the employer failed to comply with the terms of the cited standard; (3) employees had access to the violative condition; and (4) the cited employer either knew or could have known with the exercise of reasonable diligence of the violative condition. *JPC Grp., Inc.*, No. 05-1907, 2009 WL 2567337, at *2 (OSHRC Aug. 11, 2009).

### Item 1a, Citation 1

In Item 1a, Citation 1, the Secretary alleges a violation of § 1926.451(f)(7). The cited standard requires scaffolds

> be erected, moved, dismantled, or altered only under the supervision and direction of a competent person qualified in scaffold erection, moving, dismantling or alteration. Such activities shall be performed only by experienced and trained employees selected for such work by the competent person.

29 C.F.R. § 1926.451(f)(7). The alleged violation description reads

> On or about November 15, 2022, and times prior the employer exposed employees to crush, struck-by, and fall hazards in that the employer did not ensure scaffolds were altered only under the direct supervision and direction of a competent person qualified in scaffold alteration.

(Citation at 6). The Secretary contends PRS employees altered the scaffolds to build platforms on which they could put the bricks and removed toeboards that the scaffolding contractor had installed. PRS contends it prohibited its employees from altering scaffolds and that its employees did not do so. If alterations were made, PRS maintains, the scaffolding contractor employees made them.

There is no genuine dispute regarding the applicability of the standard. **The standard defines a scaffold as "any temporary elevated platform (supported or suspended) and its supporting structure (including points of anchorage), used for supporting employees or materials or both." 29 C.F.R. § 1926.450(b).** The structures from which PRS employees were working met that regulatory definition.

The disputed issue is whether PRS employees altered the scaffold without supervision by a competent person in violation of the cited standard. PRS concedes it did not have a competent person[5] on site to oversee construction or alteration of the scaffolds. The determinative issue is, then, whether the Secretary established PRS employees altered the scaffolds.

*Compliance with the Terms of the Standard*

### 1. Hearsay Evidence

In finding PRS violated § 1926.451(f)(7), CSHO Kitchen relied on statements he obtained from employees of Koch and Coastal. The Secretary sought to prove PRS's noncompliance with the cited standard through CSHO Kitchen's testimony about these

---

[5] The term "competent person" is defined in the scaffold standard as "one who is capable of identifying existing and predictable hazards in the surroundings or working conditions which are unsanitary, hazardous, or dangerous to employees, and who has authorization to take prompt corrective measures to eliminate them." 29 C.F.R. § 1926.450(b)

interviews and the written interview statements prepared by CSHO Kitchen and signed by these third parties (*see* Exs. C-5 and 6, excluded). The court found them inadmissible hearsay and excluded them from the record (Tr. 103).

The Secretary, in attempting to establish the non-compliance element of her case, conceded the statements were hearsay. Hearsay, defined in the Federal Rules of Evidence as any statement "the declarant does not make while testifying at the current trial or hearing; and [offered] to prove the truth of the matter asserted…" (Fed. R. Evid. 801(c)), is inadmissible under Rule 802 unless provided otherwise by rule or statute. The Secretary argued the statements made to CSHO Kitchen by third parties fell within an exception to the hearsay rule found at Rule 807 or the "residual rule."[6] The rule reads

> **(a) In General.** Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:
>> **(1)** the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and
>> **(2)** it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.
>
> **(b) Notice.** The statement is admissible only if the proponent gives an adverse party reasonable notice of the intent to offer the statement -including its substance and the declarant's name - so that the party has a fair opportunity to meet it. The notice must be provided in writing before the trial or hearing—or in any form during the trial or hearing if the court, for good cause, excuses a lack of earlier notice.

In evaluating the applicability of the rule, the Eleventh Circuit[7] has held "Congress intended the residual hearsay exception to be used very rarely, and only in exceptional circumstances," and it

---

[6] The court notes that the Secretary, in her proffer, indicated one of the declarants did not have first-hand knowledge that PRS employees altered scaffolds but "obtained that information … through hearsay." (Tr. 102). The Secretary provided no independent basis upon which the hearsay within the hearsay statement should be admitted.

[7] Under the Act, an employer may seek review in the court of appeals in the circuit in which the violation occurred, the circuit in which the employer's principal office is located, or the District of Columbia Circuit. 29 U.S.C. § 660(a). The Secretary may seek review in the circuit in which the violation occurred or in which the employer has its principal office. 29 U.S.C. § 660(b). This case arose in Florida which is in the Eleventh Circuit. "[I]n general, '[w]here it is highly probable that a Commission decision would be appealed to a particular circuit, the Commission has … applied the precedent of that circuit in deciding the case—even though it may differ from the Commission's precedent.'" *Dana Container, Inc.*, No. 09-1184, 2015 WL 7459426, at *3 n. 10 (OSHRC Nov. 19, 2015), *aff'd*, 847 F.3d 495 (7th Cir. 2017) (citation omitted).

"appl[ies] only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present." *Rivers v. United States*, 777 F.3d 1306, 1312 (11th Cir. 2015) (internal citations and quotation marks omitted). PRS argued the Secretary had met neither the substantive nor notice requirement of the rule. The court agreed.

The court found, even if the Secretary had met the notice requirements of the rule, she failed to meet its substantive requirements. When considering the totality of the circumstances under which they were made, the statements do not carry sufficient "guarantees of trustworthiness" required for admissibility under Rule 807. CSHO Kitchen described the statements as summaries conceding they were not word for word transcriptions (Tr. 46, 63). Although in taking the statements, CSHO Kitchen informed the declarants the statements were being taken under penalty of perjury (Tr. 45-47, 65), the declarants were not formally placed under oath by an individual authorized by law to do so. And, because the cause of the accident could have been attributed to improper configuration of the scaffold, Coastal management had a motive to shift blame for that improper configuration to PRS (Tr. 250).

Rule 807 also requires the court to consider whether the record contains evidence corroborating the statements. Fed. R. Evid. 807(a)(1). The Secretary provided scant corroboration for the allegation PRS employees altered the scaffolds in order to build platforms for holding bricks and none for the allegation PRS employees removed toeboards. The record contains evidence that PRS employees did not have the tools necessary to alter the scaffolds (Tr. 171). The Secretary proffered no documentary evidence supporting the allegation Koch and Coastal management raised the issue with PRS management. PRS presented testamentary evidence to the contrary (Tr. 129, 236). Considering the record as a whole, the statements do not meet the threshold requirement for sufficient guarantees of trustworthiness.

Nor does the record support a finding the statements are more probative on the issue than any other evidence the Secretary could have obtained through reasonable efforts. *See* Fed. R. Evid. 807(a)(2). The Secretary failed to establish the unavailability of the declarants to provide live testimony. The Secretary's counsel had been unsuccessful in contacting either of the declarants at any known address. As a result, the Secretary could not establish she had properly served subpoena on either individual. The Secretary failed to establish she made all reasonable efforts to obtain more probative evidence. The court finds insufficient basis upon which to reconsider its ruling excluding the statements from the record.

## 2. Other Evidence of Noncompliance

In her brief, the Secretary relies on the evidence admitted at the hearing. The Secretary references CSHO Kitchen's testimony regarding what he was told about discussions between a Koch supervisor and PRS management and the testimony of Supervisor Bustos regarding attempts to build platforms on the scaffolds. Neither is probative of PRS's noncompliance. CSHO Kitchen's testimony that Waylon Reed, a Koch employee, told him he raised the issue of improper alteration of the scaffold with PRS onsite supervisors does not establish that PRS employees made such alterations, only that they had been accused of doing so (Tr. 158-59). The Secretary also cites to testimony of Supervisor Bustos in which he appears to concede PRS employees unsuccessfully attempted to make platforms out of scaffold components (Complainant's Post-Hr'g Br. at 13 citing Tr. 193-94). The colloquy went as follows:

> Q. Okay. So in order to make that easier, bricklayers or Precision workers would build sort of like a platform, correct, so that they could raise the level of bricks? Is that true?
> A. No, you cannot because from deck to deck is six – is about six feet so you're not going to be able to build another one.
> Q. Well, did you ever see them use any of the scaffolding components to – to make it easier for them to be able to lay bricks?
> A. We tried, but like it was six feet scaffold so you couldn't. You couldn't do nothing about it.
> Q. Okay. But you would try?
> A. Yes.

(Tr. 193-94). Given the court's prior ruling, this evidence stands as the sole direct evidence supporting the Secretary's contention PRS employees altered the scaffolds. It is not enough. The testimony cited was contradictory and confusing. When read in context of the entire record, such as consistent testimony PRS employees lacked the tools necessary to dismantle or build scaffolds, it is not clear what Supervisor Bustos was conceding.[8] The court declines to interpret this testimony in the manner the Secretary urges.

Finally, the Secretary finds support for her position through a series of inferences drawn from circumstantial evidence. The Secretary contends because Coastal did not identify a loose scaffold component during its inspection and no contractor employees were on the scaffold other

---

[8] The undersigned found Supervisor Bustos's testimony credible, despite the fact he was sometimes non-responsive during his testimony. Based on his demeanor on the stand, which often evinced confusion, the court attributes any inconsistencies or indirectness to his lack of English proficiency, rather than a lack of veracity.

than PRS employees, "the only reasonable conclusion is that an employee of Respondent improperly altered the scaffold in such a manner that resulted in a scaffolding component falling…"(Complainant's Post-Hr'g Br. at 14). Contrary to this assertion, an equally reasonable conclusion is that the component was left behind by the individuals erecting the scaffold and the Coastal employee who inspected the scaffold failed to notice it. The record lacks evidence sufficient to determine which of these equally plausible conclusions is correct.[9]

Having failed to present persuasive, admissible evidence in support of it, the Secretary did not meet her burden to establish noncompliance with the standard. Item 1a, Citation 1, is vacated.

### Item 1b, Citation 1

In Item 1b, Citation 1, the Secretary alleges PRS violated § 1926.451(h)(2)(i). Section 1926.451(h)(2) requires employee protection "[w]here there is a danger of tools, materials, or equipment falling from a scaffold and striking employees below…" As stated in the preamble to the final rule, "…paragraph [§ 1926.451] (h)(2) requires employers to protect affected employees from [falling objects] and sets forth several alternative means by which employers can provide the required protection." *Safety Standards for Scaffolds Used in the Construction Industry*, 61 Fed. Reg. 46026, 46076 (Aug. 30, 1996). An employer may protect employees from objects falling from scaffolds by either barricading the area below the scaffold (subpart (h)(2)(i)); installing toeboards (subpart (h)(2)(ii)); where toeboards are insufficient due to height, by using panels or screening above the toeboards (subpart (h)(2)(iii)); installing a guardrail system with openings small enough to prevent objects from falling (subpart (h)(2)(iv)); or by using a canopy, debris net, or catch platform (subpart (h)(2)(v)). In the Amended Citation, the Secretary alleged PRS "…exposed employees to struck-by hazards in that the employer permitted its employees to enter a hazard area located below the scaffold where objects could fall." Where no other alternative protective measure was utilized under § 1926.451(h)(2), the Secretary specifically contends PRS failed to protect its employees from falling object hazards by barricading and prohibiting employees from entering into areas below the scaffold where objects may fall, as required by § 1926.451(h)(2)(i).

*Applicability of the Standard to the Worksite Conditions*

---

[9] Other than a single completed scaffold tag, the record is devoid of any evidence regarding how Coastal inspected the scaffolds.

As previously discussed, the structures from which PRS employees were working met the regulatory definition of a scaffold and the standards at § 1926.451 apply. To establish the applicability of the requirements of § 1926.451(h), the Secretary must also establish there existed a "danger of tools, materials, or equipment falling from [the] scaffold and striking employees below…" These conditions existed at the worksite. Several objects on the scaffold, including the scaffold component that fell, the cardboard boxes being dropped, and the bricks being stacked during the night shift, had the potential to fall to the ground and strike anyone below (Tr. 181). Additionally, PRS employees worked with standard small hand tools used in bricklaying such as trowels, brick saws, and curry combs (Tr. 176-77, 183, 219). A PRS bricklayer could have dropped any of these tools, striking someone working below. At least one employee worked directly below the employees on the scaffold on the morning of the accident. The standard applies to the conditions at the worksite.

*Violation of the Terms of the Standard and Employee Exposure*

There is no factual dispute regarding the lack of protection from falling objects required by the standard or that a PRS employee was exposed to a falling object hazard. The accident provides proof of actual exposure. *See Phoenix Roofing, Inc.*, No. 90–2148, 1995 WL 82313, at *3 (OSHRC Feb. 24, 1995) ("[e]xposure to the violative condition may be established" by, among other things, "showing actual exposure"), *aff'd*, 79 F.3d 1146 (5th Cir. 1996) (unpublished). The record establishes no physical methods for preventing objects falling from the scaffold were in use. PRS does not dispute it did not barricade the area below the scaffold and allowed employees to enter the area. PRS did not meet the requirements of the cited standard thereby exposing its employees to a hazard.

PRS does not dispute the facts establishing noncompliance or exposure. Rather, PRS attempts to shift the blame for the creation of the hazardous condition to Coastal, arguing that because a toeboard would have prevented the accident, and because PRS had no ability to install toeboards, it cannot be found in violation of the cited standard. PRS's argument, based on an unsupported interpretation of the standard and a misguided focus on the cause of the accident, is without merit.

PRS predicates its position on a reading of the standard previously rejected by this court (Order Den. Resp's Mot. Summ. J. & Den. Sec'y Cross Mot. Partial Summ. J., Feb. 25, 2024). PRS argues where, as here, a scaffold is more than 10 feet above the lower level, the only

applicable standard is § 1926.451(h)(ii).[10] The court previously rejected this argument on the grounds that the use of the word "or" in the standard establishes each of the methods enumerated in § 1926.451(h) as alternative means of compliance (*Id*. at 5-6). Had the drafters of the standard intended to delineate specific methods of compliance under certain circumstances, they could have done so clearly. The court's ruling rejecting PRS's interpretation of the standard is based on the plain meaning of the words of the standard. *See Jesco, Inc.*, No. 10-0265, 2010 WL 9448085, at *2 (OSHRC Mar. 26, 2013) (finding "[i]f the wording is unambiguous, the plain language of the standard will govern").

Rehashing much of its prior argument, PRS contends the language regarding the platform height would be superfluous if other options for compliance were permissible when a scaffold platform exceeds 10 feet. PRS provides no support in the standard's history or otherwise for this restrictive interpretation. A thorough reading of the preamble to the standard leads to a contrary conclusion and confirms the plain meaning. *Safeway Store No. 914*, No. 91-373, 1993 WL 522458, at *9 (OSHRC Dec. 16, 1992) ("…the Commission will consider statements made in the preamble to the standard as the most authoritative guide to the standard's meaning."). The preamble states compliance with § 1926.451(h)(2)(i) "…will enable employers to eliminate employee exposure to the hazard" and "if no employees are exposed, no [other] protective measures are necessary." 61 Fed. Reg. at 46076. With regard to § 1926.451(h)(2)(ii), the preamble explains the need for toeboards is limited to "only [those areas] where needed to protect employees below from falling object hazards." *Id*. The drafters go on to explain,

> For example, on a long scaffold where employees are working on the ground near one end of the scaffold, compliance with this provision would require the scaffold to have a toeboard at the end over the employees below, but not at the other end. This would be the case regardless of the height of the scaffold work platform. This change recognizes that toeboards and equivalent members are for the protection of employees below. Accordingly, if no employees are exposed, no protective measures are necessary.

*Id*. The explanatory materials in the preamble make clear the purpose of the standard is to provide protection from falling object hazards by one of the enumerated alternative means, including eliminating the hazard entirely. Nothing in the language of the standard or the explanatory materials suggests only one method is acceptable under certain circumstances.

---

[10] Section 1926.451(h)(ii) states "[a] toeboard shall be erected along the edge of platforms more than 10 feet (3.1 m) above lower levels for a distance sufficient to protect employees below…" 29 C.F.R. § 1926.451(h)(2)(ii).

PRS contends a toeboard would have prevented the accident. The Commission has consistently recognized, that "[n]oncompliance, however, is not dependent on how the incident precipitating the OSHA inspection occurred." *Midwest Equipment Co.*, No. 19-0723, 2022 WL 1277649, at *3 (OSHRC Apr. 15, 2022)(citing *Par Elec. Contractors, Inc.*, 20 BNA OSHC 1624, 1626 (No. 99-1520, 2004); *Am. Wrecking Corp.*, 19 BNA OSHC 1703, 1707 n.4 (No. 96-1330, 2001) (consolidated), *aff'd in relevant part*, 351 F.3d 1254 (D.C. Cir. 2003).

By focusing on the cause of the accident, PRS fails to recognize its obligation under the Act to protect its own employees from exposure to hazardous conditions. *See Simpson, Gumpertz & Heger, Inc.,* No. 89-11300, 1992 WL 224829, at *8 (OSHRC Aug. 28, 1992), af'd, 3 F.3d 1 (1ˢᵗ Cir. 1993); *S. Pan Servs., Co*., No. 08-0866, 2014 WL 7338403, at *5 (OSHRC Dec. 18, 2014)(holding long-standing Commission precedent recognizes "an employer whose own employees are exposed to a hazard or violative condition—an 'exposing employer'—has a statutory duty to comply with a particular standard even where it did not create or control the hazard"), *aff'd*, 685 F. App'x 692 (11ᵗʰ Cir. 2017)(unpublished).  Even where a subcontractor is unable to correct a violative condition, the Commission has held it responsible for taking reasonable "alternative measures to protect its employees." *Simpson, Gumpertz & Heger,* 1992 WL 224829, at *8. Prohibiting employees from working below the scaffold would have eliminated exposure to the hazard. PRS provided no reason it could not have done so.

PRS violated the requirements of the standard and exposed its employee to the hazard.

*Employer Knowledge*

To establish knowledge, the Secretary must prove that the employer knew or could have known with the exercise of reasonable diligence of the conditions constituting the violation. *Thomas Indus. Coatings, Inc.*, No. 06-1542, 2012 WL 1777086, at *3 (OSHRC Feb. 28, 2012) (internal quotations omitted). That is, the Secretary must show the employer was aware of the physical conditions constituting the violation. *See Phoenix Roofing,* 1995 WL 82313, at *3. Because corporate employers can only obtain knowledge through their agents, the actions and knowledge of supervisory personnel are generally imputed to their employers, and the Secretary can make a prima facie showing of knowledge by proving a supervisory employee knew of or was responsible for the violation. *Todd Shipyards Corp*., No. 77-1598, 1984 WL 34912, at *4-5 (OSHRC Aug. 3, 1984).

PRS had two supervisory employees on the worksite on November 12, when the accident occurred. Supervisor Bustos was present and responsible for directing the work (Tr. 60). He was onsite throughout the shift, walking the work area (Ex. C-7). Supervisor Bustos had disciplinary authority and responsibility to report unsafe conditions (Tr. 60). Foreman Rocha described himself as a "working supervisor." (Ex. C-8). He had authority to assign employees work (Ex. C-8). Supervisor Bustos's and Foreman Rocha's knowledge of the conditions at the worksite are imputed to PRS.

Both Foreman Rocha and Supervisor Bustos knew an employee was working under the scaffold (Tr. 187). Both were also aware of the potential for objects to fall from the scaffold. Supervisor Bustos had identified a falling object hazard in both his November 11th and 12th JSA's (Tr. 180; Exs. C-11 and C-12). He testified he addressed that hazard in the pre-shift meeting the same day when he also went over assignments (Tr. 180, 184). He conceded there was always a possibility something could fall from the scaffold while employees were working on them (Tr. 181). Supervisor Bustos was also aware that the scaffolds lacked toeboards (Tr. 176, 188-91). He had made that observation prior to the start of the shift (Tr. 189). PRS supervisors were aware of the conditions creating a hazard and assigned an employee to an area in which he would be exposed. This knowledge is imputed to PRS. *Angel Bro. Enter. Ltd.*, No. 16-0940, 2020 WL 4514841, at *2-3 (OSHRC July 28, 2020), *aff'd*, 18 F.4th 827 (5th Cir. 2021) (imputing to the employer knowledge of supervisor who directed an employee into a hazardous area, creating the violative condition).

PRS counters that its supervisors did not know the requirements of the scaffold standard and were unaware of the presence of the scaffold component before it fell. Whether PRS supervisors were aware of the requirements of the standard is irrelevant to the finding of employer knowledge. The Commission has long-recognized "that the knowledge element of section 17(k) of the Act refers to knowledge of the physical conditions that constitute a violation, not to knowledge of the requirements of the law." *George C. Christopher & Sons, Inc.*, No 76-647, 1982 WL 189089, at *9 (OSHRC Feb. 26, 1982) (citing *Charles A. Gaetano Constr. Corp.*, 6 BNA OSHC 1463, 1465 n. 3 (No. 14886, 1978). PRS's focus on knowledge of the existence of the specific object that caused the injury is equally misplaced. Even if unaware of the existence of the component that fell, PRS was aware it was working with objects on the scaffold that could fall. *See LJC Dismantling Corp.*, No. 08-1318, 2014 WL 1292214, at *5 (OSHRC Mar. 28,

2014) (finding employer had constructive knowledge because it should have been aware employee would be subjected to overhead hazard posed by other employees' tasks). Its own documentation belies any claim to the contrary (Exs. C-11 and C-12).

The Secretary has established by a preponderance of the evidence all of the elements of a violation of § 9126.451(h)(i). Item 1b, Citation 1, is affirmed.

## Characterization

The Secretary alleges the violation was serious. A violation is serious when "there is a substantial probability that death or serious physical harm could result" from the hazardous condition at issue. 29 U.S.C. § 666(k). The Secretary need not show that there was a substantial probability that an accident would occur; only that if an accident did occur, death or serious physical harm is the likely result. *See Conagra Flour Milling Co.*, No. 88–2572, 1992 WL 215113, at *7 (OSHRC Aug. 18, 1992). The wrist fracture sustained by the injured employee evinces the serious nature of the hazard of objects falling 14 feet from the scaffold onto employees working below. The violation is serious.

## Penalty

The Commission, in assessing an appropriate penalty, must give due consideration to the gravity of the violation and to the size, history and good faith of the employer under § 17(j) of the Act. 29 U.S.C. §666(j). The Commission is the final arbiter of penalties. *Hern Iron Works, Inc.*, No. 88-1962, 1994 WL 53780, at *3 (OSHRC Feb. 18, 1994), *aff'd*, 937 F.2d 612 (9th Cir. 1991) (table); *see Valdak Corp.*, No. 93-0239, 1995 WL 139505, at *3 (OSHRC Mar. 29, 1995)("The [OSH] Act places limits for penalty amounts but places no restrictions on the Commission's authority to raise or lower penalties within those limits."), *aff'd*, 73 F.3d 1466 (8th Cir. 1996). In assessing a penalty, the Commission gives due consideration to all of the statutory factors with the gravity of the violation being the most significant. *Capform Inc.*, No. 99-0322, 2001 WL 300582, at *4 (OSHRC Mar. 26, 2001), *aff'd*, 34 F. App'x 152 (5th Cir. 2002) (unpublished). "Gravity is a principal factor in a penalty determination and is based on the number of employees exposed, duration of exposure, likelihood of injury, and precautions taken against injury." *Siemens Energy & Automation, Inc.,* No. 00-1052, 2005 WL 696568, at *3 (OSHRC Feb. 25, 2005).

The Secretary grouped the two alleged violations for penalty purposes and proposed a penalty of $8706. Because the court vacates Item 1a, Citation 1, the court will assess a gravity-based penalty for the single violation alleged in Item 1b, Citation 1.

The gravity of the violation established as alleged in Item 1b, Citation 1, is high. Although only one employee was exposed to the falling object hazard, he was exposed his entire shift. The likelihood that an object would fall was significant, given that multiple employees were working above; as was the likelihood of injury given that the objects falling could have included insulated brick and various masonry tools. Although the object most likely to fall was a cardboard box, which had less chance of serious injury, PRS was aware of other, more destructive objects, were on the scaffold. The injured employee sustained a fracture, which is a serious injury. Despite recognizing the possibility that objects might fall, PRS did little, other than shout warnings, to protect the employee on the ground.

The court must also consider whether the maximum penalty for a serious violation should be reduced in recognition of the other statutory factors. *See* 29 U.S.C. § 666(j). The record reflects PRS is a small employer with no significant history of violations. Based upon CSHO Kitchen's overall description of it, the court concludes PRS was cooperative in the inspection. However, the record, which contains no documentary evidence of training or safety and health programs, fails to establish PRS has made significant good faith efforts to ensure its employees working on and around scaffolds are safe (Tr. 92); *see Capform Inc.*, No. 99-0322, 2001 WL 300582, at *5 (Commission considers "various factors including the employer's safety and health program and its commitment to assuring safe and healthful working conditions" in assessing good faith). The court finds a penalty of $7000, approximately half the maximum penalty for a serious violation[11], appropriate under all the circumstances.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The foregoing decision constitutes the findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52(a).

---

[11] In 2015, Congress passed the Federal Civil Penalties Inflation Adjustment Act Improvements which directs agencies to adjust their penalties for inflation each. For calendar year 2022, the maximum civil penalty for a violation of the Act was $14,502.

**ORDER**

Based upon the foregoing decision, it is ORDERED that:

Item 1a, Citation 1, is vacated;

Item 1b, Citation 1, is affirmed as a serious violation with a penalty of $7000 assessed.

**SO ORDERED.**

/s/_____
Heather A. Joys
Administrative Law Judge, OSHRC

**Dated: April 15, 2025**
Atlanta, GA